

## NUMBER 13-09-00549-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

**DENNIS GARZA,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

### On appeal from the 206th District Court
### of Hidalgo County, Texas.

## MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Rodriguez and Garza
### Memorandum Opinion by Chief Justice Valdez

Appellant, Dennis Garza, was convicted of three counts of indecency with a child by contact, three counts of sexual assault of a child, and two counts of aggravated sexual assault of a disabled person. *See* TEX. PENAL CODE ANN. §§ 21.11, 22.011 (West 2011), 22.021 (West Supp. 2011). Garza was sentenced to thirty-five years' confinement for each count of aggravated sexual assault and for one count of sexual

assault of a child. For two additional counts of sexual assault of a child, Garza received two thirteen-year sentences; and for two counts of indecency with a child, Garza received two eight-year sentences. For the final count of indecency with a child, Garza was sentenced to seven years' confinement. The sentences were ordered to run concurrently. By eight issues, Garza contends that: (1) the trial court reversibly erred in ruling that lost exhibits have been accurately duplicated and that documents that were not duplicated were not necessary to the resolution of this appeal; (2) the trial court reversibly erred by instructing the jury in its charge that the alleged victim was disabled; (3) the trial court reversibly erred by admitting irrelevant and unfairly prejudicial evidence of extraneous conduct; (4) the evidence was insufficient to support the convictions; (5) the trial court reversibly erred "by enhancing Garza's punishment on all counts because there was insufficient evidence to support the enhanced punishment range"; (6) the indictments in counts one and two were defective; (7) the trial court reversibly erred by failing to instruct the jury on an essential element of aggravated sexual assault; and (8) trial counsel rendered ineffective assistance. We affirm.

## I. BACKGROUND AND PROCEDURAL HISTORY

The evidence at trial showed that Garza and his girlfriend, Blanca Virgil, moved into a home occupied by Virgil's sister, S.B., and S.B.'s fifteen-year-old daughter, Elizabeth.[1] At some point, S.B. claimed that she walked into the living room of the home and saw Garza and Elizabeth engaged in a sexual act. The next day, S.B. told her niece, Elise Virgil, what she had witnessed, and the police were contacted.

---

[1] Elizabeth is a pseudonym used in the trial court to protect the alleged victim's identity.

2

Garza was arrested and tried. The jury found Garza guilty of two counts of aggravated sexual assault, three counts of sexual assault of a child, and three counts of indecency with a child by contact.

Garza was sentenced on June 1, 2009, and he filed a motion for new trial on June 23, 2009, which the trial court denied. Garza filed a notice of appeal on August 12, 2009. On March 4, 2010, Sheila Heinz, the court reporter who recorded Garza's trial proceedings, filed the reporter's record including, among other things, an "Exhibit Index" listing the exhibits admitted at trial and a document stating that Heinz "certif[ies] that the exhibits that should be attached hereto have been misplaced and are not part of this record." Heinz further stated that she had called Garza's appellate and trial counsel and that they had informed her that they did not have the missing exhibits. Heinz assured that she would "continue to make every effort to locate [the] exhibits." On April 27, 2010, Heinz filed, with this Court, the following exhibits: (1) State's Exhibit 1, a copy of a Sexual Assault Nurse Examiner's ("SANE") report; (2) State's Exhibit 9, an article entitled, "Anogenital Trauma in Sexually Abused Children"; and (3) Defendant's Exhibit 1, a copy of a handwritten letter from S.B. apologizing to Garza for believing Elizabeth's accusations of sexual abuse.[2]

Garza filed a brief in this case on November 2, 2010 complaining that the trial exhibits had been lost. The State filed a motion requesting that this Court abate the appeal and remand the case to the trial court for a hearing on the issue of the lost exhibits. On December 2, 2010, we abated the case and remanded it to the trial court

---

[2] The official court reporter certified that the exhibits constituted "true and correct duplicates of the original exhibits, excluding physical evidence, offered into evidence during the trial proceedings. . . ."

to conduct a hearing pursuant to Texas Rule of Appellate Procedure 34.6. *See* TEX. R. APP. P. 34.6.

The trial court held a hearing regarding the lost exhibits on February 14–15, 2011[3] to determine: (1) whether Garza had timely requested the reporter's record; (2) if, without the fault of Garza, a significant exhibit or a significant portion of the court reporter's notes and records had been lost or destroyed; (3) if the lost or destroyed exhibits were necessary to the appeal's resolution; and (4) if the lost or destroyed exhibits cannot be replaced by agreement of the parties or with a copy determined by the trial court to accurately duplicate with reasonable certainty the original document. *See id.* After hearing evidence concerning the lost or destroyed exhibits, the trial court made the following findings:

A. The Court finds that the exhibits that were offered and admitted into evidence with the Trial Court are lost or misplaced and that Ms. Sheila Heinz has exercised reasonable efforts and diligence in searching for the lost or misplaced exhibits, and in spite of Ms. Heinz's diligent efforts to do so, has been unable to find them.

B. The court finds that the record that Ms. Sheila Heinz filed with the Court of Appeals on March 1, 2010 is complete, except for the missing exhibits.

C. The Court finds from the testimony of the witnesses that the record prepared and filed by Ms. Sheila Heinz contains testimony from the trial witnesses that describe the missing exhibits.

D. The Court finds that the exhibits were not lost or misplaced by fault of either [Garza] or [the State] in this case.

E. The Court finds that [Garza's] request for an appellate record included copies of the trial exhibits.

---

[3] The hearing to determine whether Garza was entitled to a new trial due to the lost exhibits was held in the 332nd District Court with the Honorable Mario E. Ramirez presiding. Garza's trial was held in the 206th District Court with the Honorable Rose Guerra Reyna presiding.

4

F.    The Court finds that [Garza] and [the State] are not in agreement as to substitution of copies of lost or misplaced exhibits.

G.    The Court finds that the exhibits offered and admitted during the hearing are copies that accurately duplicate with reasonable certainty the original exhibits.

H.    In particular, the Court further finds that the following exhibits offered and admitted by the Court accurately duplicate with reasonable certainty the original exhibit, as follows:

   i.    State's Exhibit 1/B—Sexual Assault Nurse Examiner (Estrella's House)

   ii.    State's Exhibit 2/C—Notice of Filing and attached Medical Records

   iii.    Defendant's Exhibit 1/State's Exhibit D—Letter dated 1/7/09

   iv.    State's Exhibit 9/E—Peer Review Article (Anogenital Trauma in Sexually Abused Children)

   v.    State's Exhibit 12/F—Pen Packet (Affidavit of Vanessa Jones with attached records)

I.    The Court further finds that the photograph's [sic] marked, offered and admitted as State Trial Court Exhibit's [sic] 3, 4, 5, 6, and 7, were not found and copies were not available to accurately duplicate with reasonable certainty the original exhibit, but are described in the transcript prepared by Ms. Sheila Heinz, and are not necessary to the appeal's resolution.

J.    The Court further finds that licensure credentials pertaining to Johnsett Cavazos Reyna marked, offered, and admitted as State Trial Court Exhibits 10, 11, and Defendant's Trial Court Exhibit #2, were not found and copies were not available to accurately duplicate with reasonable certainty the original exhibits, but are described in the transcript prepared by Ms. Sheila Heinz, and are not necessary to the appeal's resolution.

5

On March 17, 2011, Regina Vasquez, the court reporter who recorded the rule 34.6 hearing, filed a reporter's record of the February 14–15 proceeding along with the duplicate exhibits referenced above in the trial court's findings.

## II.    MISSING EXHIBITS

By his first issue, Garza contends that the trial court committed reversible error by determining that certain lost exhibits have been accurately duplicated with reasonably certainty and that the exhibits that were not duplicated were not necessary to a resolution of this appeal. Garza alleges that loss of the exhibits requires automatic reversal of his conviction and remand for a new trial.

### A.    Applicable Law

An appellant is entitled to a new trial due to a missing record when: (1) the appellant has timely requested the reporter's record; (2) a significant exhibit or a significant portion of the court reporter's notes and records has been lost or destroyed without the appellant's fault; (3) the lost or destroyed portion of the reporter's record or exhibit is necessary to the appeal's resolution; and (4) "the lost [or] destroyed . . . portion of the reporter's record cannot be replaced by agreement of the parties, or the lost or destroyed exhibit cannot be replaced either by agreement of the parties or with a copy determined by the trial court to accurately duplicate with reasonable certainty the original exhibit." TEX. R. APP. P. 34.6(f).

If the appellant fails to show that the missing exhibits are necessary to resolve the appeal, a new trial is not required. *Routier v. State*, 112 S.W.3d 554, 571–72 (Tex. Crim. App. 2003); *Issac v. State*, 989 S.W.2d 754, 756–57 (Tex. Crim. App. 1999). Essentially, our determination of whether the exhibit is necessary to the appeal's

6

resolution is a harm analysis. *Routier*, 112 S.W.3d at 571–72; *Issac*, 989 S.W.2d at 757. If the missing exhibit is not necessary for the resolution of the appeal, then the loss of that exhibit is harmless and a new trial is not required. *Routier*, 112 S.W.3d at 571–72; *Issac*, 989 S.W.2d at 757.

## B. The February 14–15 Hearing

At the February 14–15 hearing, the State presented testimony from the following witnesses: (1) Heinz; (2) Erick Palomares, the administrator and custodian of medical records of Family Practice Center; (3) Elvia Mungia, the SANE, who conducted the sexual abuse examination of Elizabeth; (4) Carlos Ortegon, Garza's trial defense attorney; and (5) Marian Swanberg, an assistant district attorney with the Hidalgo County District Attorney's Office. The defense presented testimony from Regina Richardson, Garza's co-counsel at trial.

Heinz testified that she was the official court reporter who recorded Garza's trial in May 2009. Heinz recalled that during Garza's trial, various exhibits had been admitted into evidence, that she took charge of those exhibits, and stored them in her office. Heinz stated that at the close of the guilt/innocence phase of Garza's trial, she provided the exhibits admitted at trial to the jury. She also provided the exhibits to the jury at the punishment phase of Garza's trial. Heinz recalled collecting and receiving the exhibits from the jury at the conclusion of the trial and that she stored the exhibits on her desk in her office. Heinz did not review the exhibits after putting them on her desk.

Heinz was unable to locate the following State's exhibits admitted at trial: (1) the SANE exam report (State's exhibit 1); (2) Elizabeth's medical records from 2005 to 2009 (State's exhibit 2); (3) pictures of different parts of the house where Elizabeth lived

(State's exhibits 3–7); (4) a peer review article (State's exhibit 9); (5) Garza's pen packet (State's exhibit 12); and (6) information regarding defense witness Johnsett Cavazos Reyna's New York and Texas nursing licenses (State's exhibits 10–11). A demonstrative exhibit used by the State and not admitted into evidence at trial was also missing. Defense exhibits were also missing, including S.B.'s letter and Reyna's temporary license. Heinz explained her efforts in locating the missing exhibits as follows:

> Well, I looked through my entire office here at the courthouse, all the drawers, all the boxes, through other files that were in my office. I looked in the storage room that I have here on the second floor. I pulled the docket of the week that I realized that I needed them, and I looked through several civil files as well as criminal of everything that I worked on that week, as it was a very busy week so I had a lot going on. I also looked through my vehicle. I looked through my house.

According to Heinz, she has continued to look for the missing exhibits, and she has attempted to replace the missing exhibits by speaking with Ortegon, Richardson, and Assistant District Attorneys Theodore C. Hake and Swanberg.

Heinz testified that she eventually received the SANE examination report, the peer review article, and pen packet from Swanberg. Heinz received Defense exhibit 1 (S.B.'s letter) and Elizabeth's medical records from Ortegon. Heinz understood that the copies provided to her were fair and accurate duplicates of the exhibits admitted at trial. Heinz agreed that Garza was not at fault for the loss of the exhibits.

Heinz explained that in her normal procedures, she files copies of the original exhibits with the court of appeals and she makes two copies of the record. The original is sent to the court of appeals, and the copy goes to the District Clerk's office. Heinz stated that when she filed a supplemental reporter's record containing copies of the

8

exhibits she acquired from Swanberg and Ortegon with the court of appeals, she certified that the exhibits attached to the record were true and accurate copies.

On cross-examination, Heinz agreed that she could not independently say that the copies of the exhibits she filed were not missing any pages or if they were accurate. When asked if she was able to state whether the copies of the missing exhibits were accurate or accurately reflected what was introduced at trial, Heinz stated, "No, sir." Heinz agreed that Swanberg told her that the documents she provided were duplicates of the originals and that she based her certification that the copies filed with the court of appeals were accurate copies of the originals on what Swanberg and Ortegon told her. Heinz testified that no one has been able to provide copies of: (1) State's exhibits 3–7, the pictures of the house; (2) State's exhibit 8, a demonstrative exhibit not admitted, which was a picture of a bottle of lubricant; and (3) Reyna's licenses—State's exhibits 10–11 and Defense exhibit 2. Heinz stated that no one told her where they acquired the copies of the exhibits they provided to her.

On re-direct examination, Heinz stated that she made a reporter's record of the proceedings in Garza's trial and that it contains a complete record of the testimony and of descriptions of the exhibits admitted at trial. She agreed that the record contains the witnesses' description of exhibits. On re-cross examination, Heinz again stated that she had not received Elizabeth's medical records from Swanberg, but had received them from Ortegon.

Palomares testified that he received a subpoena in April 2009 regarding Elizabeth's medical records and, upon receiving the subpoena, prepared a business record affidavit, and attached the requested records. Upon request, Palomares brought

9

those records with him to the February 14–15 hearing. After reviewing State's exhibit 2, Palomares stated that the documents were copies that he had reviewed and filed in the trial court and that they fairly and accurately represented the contents of the original file of those records. Palomares did not testify at Garza's trial.

On cross-examination, Palomares testified that Elizabeth's medical records that he brought with him contained more information because she had continued seeking medical treatment after Garza's trial. However, Palomares stated that all of the medical records that were requested and that he provided for Garza's trial were included. Palomares agreed that he could not determine what was actually given to the jury during Garza's trial, but Palomares stated, "[T]hat affidavit is the copy that I provided Ms. Swanberg for—for the case. . . . I just know that there is a mark that—numbers that go there that are concise [sic] with the number and the sequence of my records. That's all I can say." Palomares agreed that "[a]ll [he] could really testify to is what is in State's exhibit 2 is what [he] gave to Ms. Swanberg before the trial of this case . . . ." Palomares testified that he compared State's exhibit 2 with his own records before the hearing.

Mungia testified that she was a witness for the State at Garza's trial. Mungia was the SANE at Estrella's House who conducted an examination of Elizabeth and who prepared a sexual assault medical record pursuant to that examination. Mungia recalled that her report had been admitted into evidence at Garza's trial and that State's exhibit 1 appeared to be the same document that was admitted at trial. Mungia recalled testifying about the findings of her examination and the protocol used to make the examination. Mungia also testified regarding Elizabeth's medical records that were

10

offered and admitted into evidence. Mungia had reviewed copies of those medical records before the hearing and agreed the copies appeared to be the same records that she reviewed during her testimony. Mungia stated that the copy of her report did not have any changes, discrepancies, or edits. Mungia agreed that during Garza's trial, she testified about her findings and her conclusions.

On cross-examination, Mungia testified that she brought her file to the hearing. Mungia did not conduct any cultures or lab work in this case. Mungia was certain that she had not done the cultures or lab work in this case because Elizabeth told her she had already been to the doctor; therefore, there was no reason to repeat those tests. According to Mungia, Elizabeth could only answer some questions and was unable to answer many of her questions. Mungia agreed that Elizabeth had difficulty explaining her medical history and her symptoms. When asked if Elizabeth could have been mistaken that she had other lab work done, Mungia replied, "No. She could tell me what had happened. She couldn't tell me dates. She couldn't tell me things like that, names of the doctor maybe, but she could tell me blood was drawn, urine was obtained, [and] that she was taking medicine. Things like that she could tell me. It was when I asked dates and things like that that she could not tell me." Mungia did not independently obtain the records of those tests before Garza's trial. However, before she testified at Garza's trial, those records were presented to her so that she could review them. Mungia clarified that she reviewed Elizabeth's medical records for the trial. Mungia testified that Elizabeth's prior medical history was not important for her examination, findings, and conclusions. Mungia did not count the number of pages in Elizabeth's medical records but recalled that there were a lot of pages. Mungia

11

reviewed Elizabeth's records from 2005 until 2009 and "looked at all the different labs that had been done." Mungia agreed that she could not state that all of the pages of her report were admitted at trial. She was only able to state that she has provided exact copies of the report that was in her file. Mungia could not testify that her report or Elizabeth's medical records had not been redacted.

Ortegon stated that he was appointed to represent Garza in this case and acted as lead counsel. The trial was held in May 2009. Richardson was Ortegon's co-counsel. Ortegon testified that he was very familiar with Defense exhibit 1, a letter written by S.B. Ortegon received the letter from a bondsman, and he showed it to Garza. The letter was admitted into evidence at trial. When asked if the copy of the letter given to Heinz appeared to be any different than the letter admitted at trial, Ortegon responded, "No, none whatsoever. . . . This—this letter is—is exactly what I remember reading and seeing at the time. . . . And the reason I do is because of the—the way it is written and its handwriting." Ortegon stated that the letter he provided is a duplicate of the original letter admitted into evidence. Ortegon recalled that he cross-examined S.B. concerning the letter and asked her about the nature and circumstances in which the exhibit was created.

Ortegon testified that Heinz contacted him some time after Garza's trial stating that some of the exhibits were missing from the record. Ortegon stated that Heinz asked him if he had copies of the exhibits that were admitted at trial, and he made copies of what he had and provided them to Heinz. Although Ortegon could not specifically recall whether he gave Heinz copies of Elizabeth's medical records, he thought he may have because he had copies of them. Ortegon stated that he acquired

12

copies of Elizabeth's medical records from the trial court's file and that those medical records were in the court's and district clerk's files, making them open records. Ortegon made copies of Elizabeth's medical records because he wanted the defense expert to review them. Ortegon did not object to admission of Elizabeth's medical records. Ortegon recalled that Mungia provided testimony regarding Elizabeth's medical records.

Ortegon called Reyna, a nurse, to testify as an expert witness on behalf of the defense. Ortegon did not proffer Reyna's testimony because according to Ortegon, Garza "had issues" with him and "was attacking him." Richardson proffered Reyna's testimony. Regarding Reyna's testimony, Ortegon stated, "[W]e did proffer was she a licensed nurse in the State of Texas, and then there was some issues of the timing. But that was resolved, where she worked, kind of her biographical information as a registered nurse." According to Ortegon, Reyna had a temporary license "because she was licensed in New York and she was going through—at the time of the testimony, she was going through the process of becoming licensed in the State of Texas." Ortegon did not have copies of Reyna's credentials.

On cross-examination, Ortegon stated that in Garza's case, there were no pages taken out of the exhibits and no redactions. Ortegon explained that the medical records and SANE report were all admitted and that he has never "seen [a trial] where anything was [redacted] in [his] 16 trials that [he has] had." Ortegon testified that specifically in this case, there were no redactions. Ortegon could not state how many pages of Elizabeth's medical records were admitted at trial.

Ortegon recalled that pictures of the rooms of the house were admitted at Garza's trial, but he did not object because in his "legal opinion [he did not] think those

13

pictures offered any[thing] highly prejudicial . . . [he] didn't think the pictures were prejudicial that would, you know, hurt [Garza's] defense. It was a picture of the house and rooms." Ortegon believed the pictures were relevant because the alleged crimes were committed in the house.

On re-direct examination, Ortegon recalled that a pen packet was admitted at Garza's trial. Ortegon explained that a pen packet is "where the —somebody comes in from the Texas Department of Corrections and that they identify that it is, in fact, the same person who has been in jail." The State showed Ortegon State's exhibit 12, Garza's pen packet, and Ortegon stated, "This is basically where it shows a picture of, at one time, when Mr. Garza was a young man and then the judgment, what was the plea, the years of confinement and the formal language that's in the Code of Criminal Procedure that—that is here, part of the conviction and sentence that is signed by the judge." Ortegon said that the picture included in the pen pack was of Garza. Ortegon testified that the pen packet was an exact duplicate of the original admitted at trial. Ortegon recalled that Garza pleaded "true" to the State's enhancement allegation.

Swanberg testified that she was the lead prosecutor in Garza's case. Swanberg recalled that sometime after Garza's trial, Heinz notified her that exhibits were missing from the record and requested Swanberg's assistance in duplicating those exhibits. About a year after the trial, Swanberg provided to Heinz duplicate copies of the SANE report and a duplicate copy of a peer review article. Swanberg testified that the peer review article, marked State's exhibit 9, considered a learned treatise, was a "duplicate, accurate—exact duplicate of what was offered and admitted into evidence during the

14

trial." Swanberg stated, "The purpose of this document was to make the jury aware of anal trauma and the recovery process of having experienced anal trauma."

Swanberg testified that she subpoenaed and received Elizabeth's medical records and those records were filed with the District Clerk on May 4, 2009. Heinz informed Swanberg that all of the exhibits had been lost, including Elizabeth's medical records. Swanberg stated that the copy of Elizabeth's medical records provided to Heinz was a "fair and accurate copy" of the records admitted at trial. When asked if she had a "reasonable certainty" that the SANE report provided to Heinz was a duplicate of the original that was admitted at Garza's trial, Swanberg said, "Yes. This is an accurate duplicate of the original." Swanberg remembered that Garza's pen packet was admitted into evidence. She reviewed Garza's pen packet and agreed that it appeared to be a duplicate of the same exhibit that was admitted into evidence. Swanberg identified Garza as the person depicted in the picture located in the pen packet. Swanberg testified that Defense exhibit 1, S.B.'s letter, was admitted at trial, and she agreed that there was a "reasonable certainty that these duplicate those original exhibits." Swanberg stated that none of the exhibits were redacted at trial. According to Swanberg, any redactions in the evidence would have been documented in the reporter's transcript of the trial.

Swanberg took photographs of the interior of Elizabeth's residence before Garza's trial began. Swanberg recalled that two of the photographs were of the living room, one picture of the kitchen, a picture of the bathroom, and a picture of the bedroom Elizabeth shared with S.B. Swanberg took the pictures "sometime after the criminal investigation was completed." Swanberg had printed the pictures at a local

15

drugstore and had deleted them after the trial. Swanberg did not have copies or duplicates of the pictures, which had been stored on electronic digital media. Swanberg stated that the pictures were "used just to show the jury . . . where this had taken place so they'd have an idea." When asked if the pictures were "for demonstrative and illustration purposes", Swanberg replied, "Primarily, yes." Swanberg recalled that Elizabeth and S.B. had described the rooms when they testified.

Swanberg recalled that Mungia testified regarding her examination of Elizabeth and referred to and described notes or conclusions she made in her SANE report. Swanberg was unable to locate Reyna's licensing information admitted at trial. Regarding the exhibit that was used for demonstrative purposes, Swanberg stated:

> That exhibit was of a—the victim, [Elizabeth], had described to me that [Garza], the defendant, would put white medicine on her. And she had pointed to a Germ-X bottle in my—my office saying that this was the white medicine—it looked like that white medicine.
>
> So I did—I did a search trying to find—I—based upon what she had told me when I went to her home to take those photographs, I asked her where this white medicine was. She said that [Garza] still had it, he took it—he would always hold—have it in his pocket.
>
> And it was so big (indicating). It was kind of small and it would—was blue—had a blue top, and it would open from the top and that there was a woman's face on the—on the bottle. She had orange hair and some other colored hair. And it said raspberry or strawberry. So based upon what she had told me, it was lubrication.
>
> . . . .
>
> So I had gone to several different places and looked and looked and I couldn't find it. Finally, I was able to find it on drugstore.com, printed it out, and I used that.
>
> And what—she had not seen it before trial. When she was on the stand, I used that as demonstrative evidence, and she was able to identify that that was the white medicine that the defendant would put on her.

16

According to Swanberg, Elizabeth described the product to the jury before she showed it for demonstrative purposes.

On cross-examination, Swanberg stated that she did not proffer the picture of the lubricant as evidence because it was used to "demonstrate to the jury that this thing— that the defendant obviously used lubrication." Swanberg said that Elizabeth was able to describe the lubricant "very clearly." Swanberg testified that the pictures of the residence were merely admitted to show the jury where the alleged offenses occurred. Swanberg explained, "I think they were used for illustrative purposes, so they—you can just—the jury could see where this had taken place, not necessarily to corroborate or substantiate her testimony. She was clearly able to testify to all of that without the use of the—the pictures of the bottle or that of the picture of the—of the house."

Swanberg acquired the pen packet from the Texas Department of Criminal Justice, and she did not have a copy of it in her file. Swanberg stated, "[I]t is an accurate duplicate of what was offered and admitted into evidence back in the trial— during the trial." Swanberg did not make a copy of the pen packet when she originally offered it into evidence during Garza's trial. When asked if she could be sure that the pen packet was exactly what the jury saw, Swanberg said, "I know it is because it's the same thing received from TDCJ." Swanberg stated that she recognized "everything" included in the pen packet. Swanberg recalled that the offense Garza had been convicted of committing was possession of a controlled substance in Cameron County, Texas. However, Swanberg could not recall the trial court's cause number or the exact number of pages included in the original exhibit. Swanberg insisted that the copy was

the "same thing" she previously received from TDCJ "[b]ecause the TDCJ, when we requested Pen Packets, they always contain the—the exact same thing. The only thing that was in addition to that, that was stapled separately, once I received it recently, was his latest conviction."

Richardson testified that she was present for Garza's entire trial. Richardson recalled that the SANE report and Elizabeth's medical records were admitted at trial. However, Richardson could not recall whether there were any redactions made or how many pages were admitted. On cross-examination, Richardson stated that discussions at trial regarding redactions would be on the record but outside the presence of the jury. Richardson did not recall whether any discussions concerning redactions occurred. Richardson recalled that an article had been admitted into evidence, but she could not remember the name of the article or who had written it. Richardson believed it was possible that some of the pages had been redacted, but she did not recall. Richardson stated that the pictures of the residence were significant to proving the case against Garza and were "instrumental in the deliberations."

Richardson recalled that the State objected to Reyna's qualifications. Richardson explained:

> It was a highly contested issue that, in my opinion, caused some confusion with the jury. There was an issue about the—the transfer and, I guess, interim licensing before final licensing in another state when you are properly licensed in one. And I believed at the time the State continuously affirmatively stated that she was not licensed, she was practicing without a license in the State of Texas. And that was repeated time and time again, same question, and it was answered the same way, and the way that we were able to establish that she, in fact, was licensed was by producing—I—I want to say it was her certificate or—we were able to obtain a copy of—of something that substantiated that she was licensed in the State of Texas.

18

Richardson testified that Defense exhibit 2, Reyna's temporary license, was important in order to establish Reyna's credibility.

## C. Copies of Lost Exhibits

After the February 14–15 hearing, the trial court determined that several of the lost exhibits were replaced by copies that accurately duplicated with reasonable certainty the original exhibits. *See* TEX. R. APP. P. 34.6(f). Those exhibits included: (1) the SANE report; (2) Elizabeth's medical records; (3) the peer review article offered by the State; (4) Garza's pen packet; and (5) S.B.'s letter to Garza. Garza first complains that the trial court erred in making its determination that those copies accurately duplicated with reasonable certainty the original exhibits. Garza generally complains that the duplicate exhibits are not accurate; however, Garza does not provide specific examples of any inaccuracies in those exhibits. *See Routier*, 112 S.W.3d at 569 ("A global complaint that the entire record is inaccurate, in light of the procedures used in the profession and in the absence of any specific examples of inaccuracies, is not sufficient for us to conclude that the record is inaccurate.").

Moreover, Texas Rule of Appellate Procedure 34.6(f) gives the trial court discretion to determine that lost exhibits may be replaced with copies if it determines that the copies accurately duplicate with reasonable certainty the original exhibits. *See* TEX. R. APP. P. 34.6(f). As the Texas Court of Criminal Appeals explained:

> [I]n *Broussard v. State*, 471 S.W.2d 48 (Tex. Cr[im]. App. 1971), the [Texas] Court [Criminal Appeals] . . . approved the substitution of a lost portion of a record. After the defendant had been convicted and punishment assessed, the State pointed out to the trial court that the original indictment had been lost. In response, the trial court issued an order declaring that the original indictment had been lost or misplaced and

19

ordered that another be substituted for it in the record. The only difference between the two indictments, according to the [trial] court's order, was that the substituted indictment did not contain the signature of the grand jury foreman. On appeal, the defendant in *Broussard* contended that the appellate record did not contain either "an indictment nor a legally substituted copy of the indictment. . . ." *Id.* at 49.

Recognizing the applicability of both Article 40.09(7), [], and Article 44.11, [], the [court of criminal appeals] rejected the appellant's contention that the record was incomplete. The Court stated: "[u]nder 44.11, the trial court may make substitutions for lost or destroyed documents, and under 40.09, Sec. 7, his findings, if supported by evidence at the hearing, are final." *Id.* at 50.

*Harris v. State*, 790 S.W.2d 568, 576 (Tex. Crim. App. 1989), *disavowed on other grounds*, *Snowden v. State*, No. PD-1524-10, 2011 Tex. Crim. App. LEXIS 1321, at *17 (Tex. Crim. App. Sept. 28, 2011); *see Routier*, 112 S.W.3d at 570 ("We have noted before that the cases under former versions, including Article 40.09 of the Code of Criminal Procedure, are still helpful and that the principles underlying these former versions apply to the newer rules."). In *Harris*, the court of criminal appeals stated that a trial court has the responsibility to make the record speak the truth and is authorized by the rules of appellate procedure to make a substitution for a lost portion of the record. *Harris*, 790 S.W.2d at 576. The *Harris* court then overruled the appellant's challenge to the trial court's substituting a lost jury charge with a replacement that was "substantially the same as that given the jury." *Id.* The court rejected the appellant's argument that the charge as substituted must be in the exact language of the lost charge and concluded that "the law requires no more than that the charge be substantially the same as the instruction shown to be lost." *Id.*

In this case, we are not faced with replacements of the original exhibits that are merely substantially similar. Instead, the trial court heard evidence, as set out above,

that the copies of the SANE report, Elizabeth's medical records, the peer review article, Garza's pen packet, and S.B.'s letter provided to Heinz were exact duplicates of the original exhibits admitted at trial. It also heard evidence that there were no redactions made at Garza's trial to any of the evidence. Therefore, because the trial court's determination is supported by the evidence presented at the February 14–15 hearing, we cannot conclude that it abused its discretion in determining that the copies of the SANE report, Elizabeth's medical records, the peer review article, Garza's pen packet, and S.B.'s letter provided to Heinz accurately duplicated with reasonable certainty the original exhibits. *See* TEX. R. APP. P. 34.6(f); *Routier*, 112 S.W.3d at 568 (concluding that the evidence supported the trial court's finding that tapes used to replace the missing portions of the record were accurate and acknowledging that the trial court's findings are entitled to deference). We overrule Garza's first issue as to those exhibits.

**D.    Missing Exhibits**

Next, Garza argues that the trial court erred in finding that the exhibits that are still missing from the record are unnecessary to a resolution of this appeal. Specifically, Garza complains that this Court is unable to review the pictures of Elizabeth's residence, the picture of the lubricant, and the documents relating to Reyna's license in order to conduct a sufficiency review and that "appellate counsel is unable to determine if an objection should have been lodged [by trial] counsel that would have shown ineffective assistance of counsel."

Our sufficiency review, which we will conduct infra section III, requires us to view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime beyond a

21

reasonable doubt.[4]  *Brooks v. State*, 323 S.W.3d 893, 898–99 (Tex. Crim. App. 2010) (plurality op.) (explaining that under the *Jackson* standard, we consider "all of the evidence in the light most favorable to the verdict," and determine whether the jury was rationally justified in finding guilt beyond a reasonable doubt); *see Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  Therefore, the lost exhibits would be relevant to our review only if they supported one of the elements of the charged offense.  *See Brooks*, 323 S.W.3d at 898–99.  However, as set out below in part III, we conclude that, even without the missing exhibits, the evidence is sufficient to support the jury's verdict.  Thus, the missing exhibits are unnecessary for our sufficiency review.

Next, Garza generally complains that the missing exhibits are needed in order to determine whether his trial counsel provided ineffective assistance by not objecting to those exhibits.  Garza's trial counsel offered Reyna's temporary license; therefore, there would have been no objection from Garza's trial counsel regarding that exhibit.  And, Garza's trial counsel did object to the State's introduction of information regarding Reyna's license in New York and in Texas and to the State's use of the picture of the lubricant for demonstrative purposes.  Therefore, there would be no reason for this Court to determine that trial counsel was ineffective in failing to object to the admission of that evidence.

Regarding the pictures of the rooms in Elizabeth's house, the trial court heard testimony from Ortegon that he believed they were admissible and from Swanberg that

---

[4] A factual sufficiency review required examining all of the evidence, both for and against the finding, in a neutral light, and determining whether the jury's verdict is either "clearly wrong and manifestly unjust" or "against the great weight and preponderance of the [conflicting] evidence."  *Brooks v. State*, 323 S.W.3d 893, 899 n.12 (Tex. Crim. App. 2010) (plurality op.).  However, we no longer engage in a factual sufficiency review and must only conduct a legal sufficiency review.  *See id.*

she utilized the pictures to show the jury where the events allegedly occurred. As the trier of fact, the trial court was free to believe this testimony. A photograph is admissible if a verbal description of what is depicted in the photograph is also admissible. *Lewis v. State*, 676 S.W.2d 136, 140 (Tex. Crim. App. 1984) (citing *Harris v. State*, 661 S.W.2d 106 (Tex. Crim. App. 1983)). Garza points to no rule, and we find none, that would have rendered testimony describing the rooms of the home inadmissible. Furthermore, given Elizabeth's detailed description of the sex acts, Mungia's testimony that Elizabeth had been vaginally penetrated, and S.B.'s testimony that she witnessed Garza having anal sex with Elizabeth, we cannot conclude that Garza was harmed by the trial court's determination that the pictures of the house were unnecessary to the resolution of this appeal. *See Routier*, 112 S.W.3d at 571–72; *Issac*, 989 S.W.2d at 757 (stating that our determination of whether the exhibit is necessary to the appeal's resolution is basically a harm analysis). We overrule Garza's first issue.

### III. SUFFICIENCY OF THE EVIDENCE

By his fourth issue, Garza generally states that he is challenging the sufficiency of the evidence on all eight counts. However, Garza only specifically attacks the sufficiency of the evidence supporting counts one and two (aggravated sexual assault of a disabled individual), counts five and seven (sexual assault of a child), and count sixteen (indecency with a child by touching). Garza challenges the evidence supporting the findings that: (1) Elizabeth was a disabled individual; (2) he penetrated Elizabeth's sexual organ with his sexual organ; (3) the penetration occurred without Elizabeth's consent; and (4) he penetrated Elizabeth's anus with his sexual organ. Garza also specifically challenges the sufficiency of the evidence to show that he contacted

23

Elizabeth's sexual organ with his mouth. Garza does not specifically challenge any of the other elements of the various offenses. Therefore, to the extent that Garza attempts to challenge the other elements of the offenses, we conclude that he has not adequately briefed those issues for our review, and we will not address them. *See* TEX. R. APP. P. 38.1(i).

## A. Standard of Review and Applicable Law

In a sufficiency review, we examine the evidence in the light most favorable to the verdict to determine whether any rational fact-finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 898–99. The fact-finder is the exclusive judge of the facts, the credibility of witnesses, and of the weight to be given testimony. *Brooks*, 323 S.W.3d at 899. We must resolve any evidentiary inconsistencies in favor of the judgment. *Id.*

We measure the legal sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Coleman v. State*, 131 S.W.3d 303, 314 (Tex. App.—Corpus Christi 2004, pet. ref'd) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). Under a hypothetically correct jury charge, in order to convict Garza of aggravated sexual assault of a disabled individual as charged in the indictment, the State must have proven beyond a reasonable doubt that Garza: (1) intentionally or knowingly; (2) caused the penetration of the sexual organ and anus of Elizabeth with his sexual organ; (3) without her consent; and (4) Elizabeth was a disabled individual. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(A)(i), (2)(c). To prove that Garza committed the offense of sexual assault of a child, as charged in the indictment, the State had to prove beyond a reasonable doubt that Garza intentionally

24

or knowingly caused the penetration of the anus of Elizabeth by his sexual organ; caused the penetration of the mouth of Elizabeth by the sexual organ of Garza; and caused the sexual organ of Elizabeth to contact the mouth of Garza. *See id.* § 22.011(a)(2).[5]

## B. Disabled Individual

Because the State charged Garza with aggravated sexual assault, it had to prove beyond a reasonable doubt the aggravating factor—that Elizabeth was a disabled individual. A disabled individual "means a person older than 14 years of age who by reason of age or physical or mental disease, defect, or injury is substantially unable to protect himself from harm or to provide food, shelter, or medical care for himself." *Id.* § 22.04(c) (4) (West Supp. 2011); *see id.* § 22.021(b)(2).

Laura Cura, the educational diagnostician at Elizabeth's school, testified that Elizabeth qualified for special education classes because she is mentally retarded. Cura explained that people who are mentally retarded are not able to function as an average person because it affects knowledge, perception, decision making, and judgment. Cura stated that people with this disability are easily persuaded, "may be a little gullible," and are infantile. According to Cura, Elizabeth suffers from mild mental retardation which causes her to have difficulty learning to read and write. Cura described Elizabeth as infantile with the mind of a younger child and not able to make logical decisions. Cura explained that due to her disability, Elizabeth may not make

---

[5] Although Garza generally alleges that he is challenging his conviction on count sixteen, indecency with a child by contact, he does not provide any argument or citation to authority regarding that count. Therefore, to the extent that he attempts to challenge that conviction, we will not address that issue. *See* TEX. R. APP. P. 38.1(i).

25

appropriate decisions and may just follow someone else's lead. Cura agreed that Elizabeth was unable to protect herself from harm due to her disability. According to Cura, it is difficult for Elizabeth to take care of herself, feed herself, and make decisions on a daily basis. Cura stated that Elizabeth would need services from agencies to help her with job skills and that she would need to find a job, such as constructing pizza boxes or sorting clothes, suited to her disability. Cura did not believe that Elizabeth was sophisticated. Viewing the evidence in the light most favorable to the prosecution, we conclude that Cura's testimony supports a finding that Elizabeth was a disabled individual.

## B. Penetration

Any penetration, no matter how slight, is sufficient to satisfy the requirements of the aggravated sexual assault statute. *Cowan v. State*, 562 S.W.2d 236, 238 (Tex. Crim. App. 1978); *Murphy v. State*, 4 S.W.3d 926, 929 (Tex. App.—Waco 1999, pet. ref'd); *see also Vernon v. State*, 841 S.W.2d 407, 408–10 (Tex. Crim. App. 1992). Penetration may be proved by circumstantial evidence. *Villalon v. State*, 791 S.W.2d 130, 133–34 (Tex. Crim. App. 1990); *Nilsson v. State*, 477 S.W.2d 592, 595 (Tex. Crim. App. 1972). Contact with the female sexual organ in a manner a reasonable person would consider more intrusive than contact with the outer vaginal lips constitutes penetration. *Vernon*, 841 S.W.2d at 409. Penetration of the vaginal canal is not required. *See id.*

Here, Elizabeth testified that Garza told her to lie down on the floor and pick up her legs. Elizabeth said that Garza then took off her pants and his pants and "almost put his thing on my pussy." She was not asked to clarify what she meant by this

26

testimony.  While testifying, Elizabeth repeatedly stated that Garza put his thing "on" her butt; however, when asked to clarify, Elizabeth explained that Garza's penis was in her butt where she goes "poo poo" and that it hurt.

S.B. testified that on one occasion, she saw Garza putting "the thing where he pees" in Elizabeth's "bottom."  According to S.B., Garza and Elizabeth then pulled up their pants and looked surprised.

Mungia testified that Elizabeth told her that she had never had "voluntary sexual intercourse."[6]  When Mungia asked Elizabeth if there was a history of sexual abuse, Elizabeth said, "[Y]es with Dennis."  Mungia stated that Elizabeth told her that Garza had penetrated her butt; however, Mungia concluded that "because of her mental condition," Elizabeth "did not know where she had been penetrated."  Mungia elaborated:  "Because of [Elizabeth's] mental capacity, I don't believe that she knew where she was being penetrated.  Maybe she was being penetrated anally but I couldn't tell.  That's where she said she was being penetrated.  What I could tell is that she had some penetration in her vaginal area."  Mungia testified that Elizabeth did not know what a vagina was and that it was possible that she mistakenly believed Garza was inserting his penis into her anus every time he assaulted her because he was "coming from behind her."  On cross-examination, Mungia stated that "it surprised [her] that [Elizabeth] didn't tell [her] there was vaginal intercourse when [she] had a finding in the vagina."

---

[6] On cross-examination, Mungia clarified that she asked, "[H]ave you ever had sex with anybody willingly," and Elizabeth replied, "[N]o."

27

Mungia saw injury to Elizabeth's hymen. She stated, "There was a place which at one time or another had torn and had healed but it didn't heal back together, it was separate." Mungia said that in her professional opinion, the injury to Elizabeth's hymen indicated that penetration had occurred. Mungia stated that the tear to Elizabeth's hymen was consistent with a penis penetrating Elizabeth's vagina from behind her. Mungia explained that the hymen is beyond the labia major or outer lips of the vagina.

Mungia stated that after reviewing Elizabeth's medical records, she noticed that Elizabeth had suffered from a urinary tract infection on April 18, 29, and May 20, 2008. Mungia explained that if Elizabeth had been anally penetrated, the bacteria located there could have caused the urinary tract infections if Garza either "rubbed or introduced his—his penis into the vagina. . . ." Mungia stated that in order to cause the urinary tract infection, the penis would have first penetrated the anus and then must have gone "through the vaginal area." Mungia opined that Elizabeth's urinary tract infections were not due to sanitary issues.

Mungia testified that Elizabeth told her that Garza "makes her kiss his thing and that he puts his thing into her back." Mungia stated that Elizabeth claimed that it happened "many times." However, Elizabeth was unable to tell Mungia when these events occurred. On cross-examination, Mungia testified that Elizabeth told her she had been "anally abused" and penetrated.

Viewing the forgoing evidence in the light most favorable to the verdict, we conclude that a rational fact-finder could have found beyond a reasonable doubt that Garza penetrated Elizabeth's anus and vagina with his sexual organ. *Jackson*, 443 U.S. at 319; *see Brooks*, 323 S.W.3d at 898–99.

28

## C. Without Consent

The State charged Garza with aggravated sexual assault on counts one and two. Therefore, it had to prove beyond a reasonable doubt that the acts occurred without Elizabeth's consent. *See* TEX. PENAL CODE ANN. § 22.021. A sexual assault is without the person's consent if "the actor knows that as a result of mental disease or defect the other person is at the time of the sexual assault incapable either of appraising the nature of the act or of resisting it." *See id.* § 22.011(b)(4).

According to the testimony at trial, Garza lived with Elizabeth and took a substantial interest in Elizabeth's education. Amy Joe Gallegos, Elizabeth's "contact special education teacher," testified that she met Garza when she gave Elizabeth a ride home. Gallegos stated that Garza asked her a lot of questions concerning Elizabeth's classes and that he was "a little upset because she was in some regular classes. . . ." According to Gallegos, Garza stated that Elizabeth was "slow" and "expressed to [her] that [Elizabeth] needed to be in a resource science class" and not in a regular education biology class. Gallegos explained to Garza that resource teachers were no longer utilized at the high school and assured Garza that a special education teacher would "go into those [regular] education classes and help her there so that she would be getting all the needs . . . all the educational needs that she would have, somebody would go in to her instead of her coming to us." Gallegos indicated that Garza did most of the talking and that S.B. merely sat and listened.

Many of the witnesses testified that Elizabeth was slow and did not understand big words. Mungia testified that Elizabeth did not know what her vagina was. Cura and Gallegos stated that Elizabeth is mentally retarded.

Furthermore, during her testimony, Elizabeth had difficulty describing the parts of the body and the sexual acts Garza performed. Mungia testified that Elizabeth did not know what body part Garza penetrated because he was behind her, and Elizabeth just assumed he was penetrating her anus on every occasion he initiated the sexual encounters. Although she was fifteen at the time of Garza's trial, Elizabeth did not know the proper terms for the penis and the vagina. Elizabeth referred to Garza's penis as his "thing," and she called her vagina her "pussy" because that is what Garza told her it was. When describing how Garza's "thing" appeared, Elizabeth said it looked like a worm and was hairy like a peach. Elizabeth said she believed Garza when he told her that medicine came out of his penis that would make her skinny. Elizabeth stated that when Garza put his penis in her mouth, the medicine would come out. Elizabeth said she would feel the medicine "like squirting, like water."

Elizabeth explained that before Garza put his "thing" in her mouth, it was "melted" and then when he put it in her mouth, it was "strong." According to Elizabeth, Garza told her to "[l]ay down as a dog and he puts [sic] his thing on [her] butt . . . so [she] can get money for the yearbook." Elizabeth testified that Garza also told her to "lay down like a dog for [she] can go to [her] friend's house." Elizabeth stated that when she asked Garza for a magazine at a convenience store, he told her "[t]hat if [she] want[ed] the magazine, [she] have to lay down as a dog and he put his thing on [her] butt."

When asked what Garza said about telling her mother what they were doing, Elizabeth replied, "That don't tell her what I was doing." Garza also told Elizabeth not to tell anyone what was occurring. Elizabeth testified that Garza told her that her father killed her dog "Dotty" with poison. When asked what Garza told her she had to do in

30

order to see Dotty again, Elizabeth responded, "To go—go take a shower one of the dogs. I go to the rest room and—and let—he puts some pillows on the floor and I do like a dog and he put the medicine on—on his—no, he didn't put his medicine on. And he put it on my butt to make Dotty come to life." Elizabeth affirmed that she believed that if she complied with Garza's instructions, Dotty would come back to life.

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational fact-finder could have found beyond a reasonable doubt Garza knew that as a result of mental disease or defect, Elizabeth at the time of the sexual assault was incapable either of appraising the nature of the act or of resisting it.[7] *See id.* Thus, the evidence showed that the sexual contact occurred without Elizabeth's consent.

**D. Contact with Mouth**

When asked what else Garza did to her "pussy," Elizabeth replied that "he licks it." Garza argues that Elizabeth did not "describe what she meant by licking that would be specific enough to state what it was with" and that even assuming she meant he used his tongue, "the statute and the indictment require it be with his 'mouth' and that term was not defined for the jury." We disagree. A "mouth" is "the cavity bounded externally by the lips and internally by the pharynx that encloses in the typical vertebrate the tongue, gums, and teeth." *Johnson v. State*, 882 S.W.2d 39, 41 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd); *Montoya v. State*, 841 S.W.2d 419, 422 (Tex. App.—Dallas 1992), *rev'd on other grounds*, 906 S.W.2d 528 (Tex. Crim. App. 1995) (concluding that the mouth includes the tongue); *see also Smith v. State*, No. 08-03-00384-CR, 2005 Tex. App. LEXIS 4203, at *27 (Tex. App.—El Paso 2005, pet. ref'd)

---

[7] We also note that Elizabeth told Mungia she had never engaged in consensual sex with anyone.

(mem. op., not designated for publication) ("[C]ommon sense requires that the word 'mouth' as used in Section 22.021(a)(1)(B)(iii) must be read to include its parts such as the tongue."). Therefore, a reasonable jury could have relied on Elizabeth's testimony to find that Garza caused Elizabeth's sexual organ to contact his mouth.

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational fact-finder could have found beyond a reasonable doubt that Garza contacted Elizabeth's sexual organ with his mouth. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(iii).

Having concluded that the evidence is sufficient as to each of the challenged elements of the respective offenses, we overrule Garza's fourth issue.

## IV.    JURY CHARGE ERROR

By his second issue, Garza contends that the trial court erroneously instructed the jury that Elizabeth was disabled in counts one and two.

Garza complains of the following instruction:

> Now if you find from the evidence beyond a reasonable doubt that on or about DECEMBER 11, 2008, in Hidalgo County, Texas, the Defendant, DENNIS GARZA, did then and there intentionally or knowingly cause the penetration of the sexual organ of ELIZABETH, a disabled individual, by Defendant's sexual organ, without the consent of the said ELIZABETH, then you will find the Defendant guilty of the offense of AGGRAVATED SEXUAL ASSAULT, as charged in the indictment.

According to Garza, this instruction relieved the State of its burden of proving that Elizabeth was disabled.

By his seventh issue, Garza contends that the trial court reversibly erred by failing to provide the statutory definition of "without the consent of the other person" in

32

the jury charge for counts one and two. Garza claims that this failure deprived him of his right to a unanimous verdict causing him egregious harm.

## A. Standard of Review and Applicable Law

An appellate court's "first duty" in analyzing a jury charge issue is "to decide whether error exists." *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). If error is found, the degree of harm necessary for reversal depends on whether the appellant preserved the error by objecting to the complained-of instruction. *Olivas v. State*, 202 S.W.3d 137, 144 (Tex. Crim. App. 2006); *see Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). If the defendant properly objected to the erroneous jury charge instruction, reversal is required if we find "some harm" to the defendant's rights. *Olivas*, 202 S.W.3d at 144; *Ngo*, 175 S.W.3d at 743; *Almanza*, 686 S.W.2d at 171. However, if the defendant did not object, we may only reverse if the record shows egregious harm to the defendant. *Olivas*, 202 S.W.3d at 144; *Ngo*, 175 S.W.3d at 743–44; *Almanza*, 686 S.W.2d at 171.

In making our determination, "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171; *see Garrett v. State*, 159 S.W.3d 717, 719–21 (Tex. App.—Fort Worth 2005), *aff'd*, 220 S.W.3d 926 (Tex. Crim. App. 2007). Jury charge error causes egregious harm to the defendant if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996) (plurality opinion).

**B.  Discussion**

1.  Comment on the Weight of the Evidence

The jury is the trier of fact, and the judge is the trier of law who must instruct the jury as to the law. *Whaley v. State*, 717 S.W.2d 26, 32 (Tex. Crim. App. 1986).  The jury must then apply the law to the facts.  *Id.*  The trial court must deliver to the jury a written charge "not expressing any opinion as to the weight of the evidence, not summing up the testimony [or] discussing the facts."  TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007).  "A charge that assumes the truth of a controverted issue is a comment on the weight of the evidence and is erroneous."  *Whaley*, 717 S.W.2d at 32.

Garza did not object at trial to the instruction, therefore, assuming, without deciding that the complained-of instruction is error, we must determine whether Garza suffered egregious harm from the alleged error.  *Almanza*, 686 S.W.2d at 171; *see Garrett*, 159 S.W.3d at 719–21.  We first consider the alleged error in light of the totality of the charge.  *See Almanza*, 686 S.W.2d at 171.  In this case, the charge made it clear to the jury that they had to unanimously find that Garza committed aggravated sexual assault and that a person cannot be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt.  The charge further instructed that the prosecution has the burden of proving each and every element of the offense charged beyond a reasonable doubt and that if it failed to do so, acquittal was required.  Finally, the charge accurately described the relevant law and identified the following elements of aggravated sexual assault, including that the victim must be a disabled individual:

> a person commits the offense of Aggravated Sexual Assault if the person intentionally or knowingly (1) causes the penetration of the anus or female sexual organ of another person by any means, without that person's

34

consent; or (2) causes the penetration of the mouth of another person by the sexual organ of the actor, without that person's consent; or (3) causes the sexual organ of another person, without that person's consent, to contact or penetrate the mouth anus, or sexual organ of another person, including the actor, and the victim is a disabled individual.

The charge as a whole placed the burden on the State and stated that the jury had to unanimously find the elements of an offense beyond a reasonable doubt. Moreover, the jury was told that the elements of aggravated sexual assault include proof that the victim is a disabled individual.

Next, we must consider the state of the evidence and determine whether the alleged jury charge error related to a contested issue. *See Hutch*, 922 S.W.2d at 173; *Almanza*, 686 S.W.2d at 171. Cura testified that Elizabeth qualified under mental retardation for special education classes. Cura explained that people who are mentally retarded are not able to function as an average person because it affects knowledge, perception, decision making, and judgment. Cura stated that people with this disability are easily persuaded, "may be a little gullible," and are infantile. According to Cura, Elizabeth suffers from mild mental retardation which causes her to have difficulty learning to read and write. Cura described Elizabeth as infantile with the mind of a younger child and not able to make logical decisions. Cura explained that due to her disability, Elizabeth may not make appropriate decisions and may just follow someone else. Cura agreed that Elizabeth was unable to protect herself from harm due to her disability. According to Cura, it is difficult for Elizabeth to take care of herself, feed herself, and make decisions on a daily basis. Cura stated that Elizabeth would need services from agencies to help her with job skills and that she would need to find a job,

35

such as constructing pizza boxes or sorting clothes, suitable to her disability. Cura did not believe that Elizabeth was sophisticated.

The State therefore presented probative evidence to the jury that Elizabeth is a disabled individual. No evidence to the contrary was presented. Moreover, we have concluded that the evidence is legally sufficient to support the jury's finding beyond a reasonable doubt that Elizabeth was a disabled individual.

Next, though Garza challenges the disability finding on appeal, the record and the statements of trial counsel did not indicate that the status of Elizabeth as a disabled individual was a contested issue at trial. *See Garrett*, 159 S.W.3d at 719–21 (finding no egregious harm in jury charge because "the record and statements of counsel [did] not indicate that [defendant's] awareness that Complainant was a firefighter was a contested issue"). The State did not convey to the jury that it did not have to determine that Elizabeth was a disabled individual. And Garza did not contest that Elizabeth was disabled or present any evidence to the contrary at trial. Garza's theory of the case was that he did not commit any of the alleged acts. He did not argue at trial that Elizabeth was not disabled.

Finally, we review counsel's closing arguments. Regarding the element of disabled individual, the prosecutor stated, "There's two here, aggravated sexual assault of a disabled individual. And I know that you heard it happened more than one time. So if you believe it happened twice, if you believe that the aggravated sexual assault of a—of a disabled individual happened more or it happened twice, then that's why there's two separate counts on aggravated sexual assault." By her statement, the prosecutor implied that the jury was required to find that two instances of aggravated sexual assault

occurred and that the victim was a disabled individual. During his closing argument, defense counsel stated that Elizabeth and S.B. were "not the most sophisticated people, they're a little slow and stuff like that." Defense counsel did not contest that Elizabeth is a disabled individual. Instead, defense counsel focused on Elizabeth's credibility and whether the acts could have been committed in a small house with various inhabitants and visitors present during the day.

Although the trial court's charge included the complained-of instruction, it properly instructed that the State had the burden of proving beyond a reasonable doubt all of the elements of the offense and that one of the necessary elements included that the victim was a disabled individual. The evidence undisputedly showed that Elizabeth is a disabled individual as defined in the charge. *See Garrett*, 159 S.W.3d at 719–21. Therefore, based on the jury charge as a whole and the entire record in this case, we conclude the record does not show egregious harm. *See Olivas*, 202 S.W.3d at 144. The charge error, if any, did not affect the very foundation or basis of his case, deprive him of a valuable right, or significantly affect his defensive theory that he did not sexually assault Elizabeth. *See Hutch*, 922 S.W.2d at 171. We overrule Garza's second issue.

### 2. Statutory Definition of Consent

A trial court must charge the jury on the "law applicable to the case." TEX. CODE CRIM. PROC. ANN. art. 36.14. If a phrase, term, or word is statutorily defined, the trial court must submit the statutory definition to the jury. *Alexander v. State*, 906 S.W.2d 107, 111 (Tex. App.—Dallas 1995, no pet.); *Willis v. State*, 802 S.W.2d 337, 342 (Tex. App.—Dallas 1990, pet. ref'd); *see Moore v. State*, 82 S.W.3d 399, 408 (Tex. App.—

Austin 2002, pet. ref'd). Section 22.011(b) of the Texas Penal Code provides the statutory definitions establishing when a sexual assault is without consent. *See* TEX. PENAL CODE ANN. § 22.011(b).

Because Garza did not object to the charge on the basis that it omitted the statutory definition of "without consent," we may only reverse if he suffered egregious harm from the error. *Almanza*, 686 S.W.2d at 171. The charge in this case required that the jury find that Garza committed the offense only if he committed the acts without Elizabeth's consent. The charge, however, did omit the statutory definition of "without consent." This was error. The statutory definition applicable here is that the contact is without the victim's consent if the "actor knows that as a result of mental disease or defect the other person is at the time of the sexual assault incapable either of appraising the nature of the act or of resisting it." *See* TEX. PENAL CODE ANN. § 22.011.

The theory of Garza's case was that he did not engage in the sexual acts alleged, not that Elizabeth consented to those acts. *See Hutch*, 922 S.W.2d at 171. Therefore, the omission of the definition of without consent did not significantly affect his defensive theory. The issue of whether Garza was aware of Elizabeth's mental defect was not contested at trial. During closing argument, neither side addressed the issue of whether Garza was aware of Elizabeth's mental defect. We have already concluded that the evidence was sufficient to prove that the sexual acts occurred without Elizabeth's consent. Moreover, Mungia testified that Elizabeth said she had not had consensual sex with anybody. Therefore, based on the jury charge as a whole and the entire record in this case, we cannot conclude that Garza suffered egregious harm from

38

the omission of the definition of "without consent." Accordingly, we overrule Garza's seventh issue.

## V.    ADMISSION OF EXTRANEOUS CONDUCT EVIDENCE

By his third issue, Garza contends that the trial court committed reversible error by admitting unfairly prejudicial evidence of extraneous conduct unrelated to the charged offenses. Garza states that, pursuant to rules of evidence 403 and 404(b), the trial court improperly allowed testimony concerning: (1) his texting "sexually suggestive messages and a photograph to another adult woman"; (2) his demeanor, cursing, and suspected drug use; and (3) sexual advances he allegedly made toward S.B. *See* TEX. R. EVID. 403 (establishing that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, considerations of undue delay, or needless presentation of cumulative evidence), 404(b) (setting out that character evidence is generally not admissible to prove conduct).

The State counters that Garza's brief is multifarious and that this Court should overrule his issue on that basis alone. We agree with the State that Garza's issue is multifarious. As such, we may refuse to review Garza's multifarious issue or we may elect to consider the issue if we are able to determine, with reasonable certainty, the alleged error about which the complaint is made. *Stults v. State*, 23 S.W.3d 198, 205 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd); *Shull v. United Parcel Serv.*, 4 S.W.3d 46, 51 (Tex. App.—San Antonio 1999, pet. denied). Therefore, we will only address the alleged errors that we are able to determine with reasonable certainty. *See Stults*, 23 S.W.3d at 205; *Shull*, 4 S.W.3d at 51.

39

First, regarding the alleged sexually suggestive text messages, Gallegos testified that Garza called and asked her if she could receive text messages; she told him she did. According to Gallegos, she then received several text messages from Garza, which were mostly jokes. Gallegos stated that Garza then sent her a text that he would be sending her a picture of his sister's Halloween costume, and she then received a picture from him. Gallegos did not see the picture; however, the next day, Elizabeth brought a letter to Gallegos. The State asked Gallegos what was in the letter. Garza objected on the basis of hearsay. Garza did not object to the testimony on any other grounds. After the trial court overruled Garza's hearsay objection, Gallegos stated that the letter was an apology for any inappropriate pictures that she may or may not have received from Garza.

To preserve error for appellate review, the point of error on appeal must comport with the objection at trial. *Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009); *Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009). Here, Garza did not object to Gallegos's complained-of testimony based on rules 403 and 404(b)—the grounds he urges on appeal—rendered the testimony inadmissible. Therefore, Garza has not preserved error on those grounds.

Next, Garza complains that the trial court erroneously admitted inadmissible evidence pursuant to rules 403 and 404(b) during S.B.'s testimony. Garza points to the following portion of S.B.'s testimony:

[The State]: Okay. Now, was there at any point that [Garza] propositioned you or discussed something sexual with you?

[S.B.]: Yes.

Q.        Okay.  What was that?

A.        Well, he just got that thing out to suck it.

Q.        Did he show it to you?

A.        Yes.

Q.        And he told you to do what?

A.        That I would suck it.

Q.        Okay.  And what did you do?

A.        Well, I would tell him no since he was [my] sister's boyfriend.

Q.        And what would—would he get upset with you when you declined.

A.        (Spanish.)

Mr. Ortegon:  My objection is the State is leading the witness.

Ortegon did not object to this testimony on the basis that it was inadmissible pursuant to rules 403 and 404(b).  Therefore, the issues brought by Garza on appeal do not comport with his objection at trial.  Accordingly, he has not preserved error.  *See Lovill*, 319 S.W.3d at 691–92; *Pena*, 285 S.W.3d at 464.

Regarding evidence of "[his] demeanor, cursing, and suspicions of drug use," Garza generally points to multiple pages in the record of testimony from Gallegos, Martha Robison, a supervisor with Abundant Home Health Care, and Juana Maria Delaney, S.B.'s former home care provider.[8]  Citing rules 403 and 404(b), Garza claims that the trial court improperly admitted evidence; however, he does not specify which

---

[8] In one sentence in his brief, Garza mentions that testimony regarding "[his] demeanor, cursing, and suspicions of drug use" was improperly admitted.  Garza does not specifically state that he is claiming that the evidence was inadmissible pursuant to rule 403 or rule 404(b) and why.  *See* TEX. R. APP. P. 38.1(i).

41

evidence, if any, was evidence of extraneous conduct or how it was prejudicial. Garza also fails to argue how the probative value of any of the complained-of evidence is substantially outweighed by any unfair prejudice. We are unable to determine the specific testimony Garza complains of on appeal. Moreover, Garza provides no discussion or analysis of relevant authorities or the record to support his argument that in the pages he cites the trial court admitted evidence in contravention of rules 403 and 404(b). Therefore, he has not provided a clear and concise argument concerning his evidentiary complaints. Accordingly, we conclude Garza's third issue is inadequately briefed and, as such, is waived. *See* TEX. R. APP. P. 38.1(i); *see also Colman v. State*, No. 05-04-00146, 2005 Tex. App. LEXIS 10343, at *2 (Tex. App.—Dallas Dec. 13, 2005, pet. ref'd) (not designated for publication) (finding that the appellant's issue complaining of rulings on hearsay objections to at least five different statements is multifarious and presents nothing for review). We overrule Garza's third issue.

## VI. ENHANCEMENT ALLEGATION

By his fifth issue, Garza contends that the evidence at his punishment hearing was insufficient to support the repeat offender enhancement allegations. The State counters that Garza pleaded "true" to the enhancement allegations.

> The [S]tate has the burden of proof to show the prior conviction was a final conviction under the law and that appellant was the person previously convicted of that offense. *Augusta v. State*, 639 S.W.2d 481, 484 (Tex.[ ]Cr[im.][ ]App. 1982); *Harvey v. State*, 611 S.W.2d 108, 111 (Tex.[ ]Cr[im].[ ]App. 1981). If, however, a defendant pleads "true" to the enhancement paragraph the State's burden of proof is satisfied. The plea of "true" is sufficient proof. *Harvey*, supra; *Dinn v. State*, 570 S.W.2d 910, 915 (Tex.[ ]Cr[im].[ ]App. 1978).

42

*Wilson v. State*, 671 S.W.2d 524, 525 (Tex. Crim. App. 1984) (en banc); *see Ex parte Sewell*, 742 S.W.2d 393, 396 (Tex. Crim. App. 1987); *Harvey*, 611 S.W.2d at 111; *Dinn*, 570 S.W.2d at 915 (when a defendant pleads "true" to the enhancement paragraph, the State's burden of proof is satisfied as the plea of "true" is sufficient proof). In addition, a defendant who enters a plea of "true" to an enhancement paragraph cannot complain on appeal that the evidence was insufficient to support the enhancement allegation. *Harvey*, 611 S.W.2d at 111. If, however, the record affirmatively reflects that the enhancement allegation was not true, such as affirmatively reflecting that the judgment for the enhancement was not final, then a sufficiency of the evidence point can be raised. *Ex parte Rich*, 194 S.W.3d 508, 513 (Tex. Crim. App. 2006).

> The State read the following enhancement allegations into the record:

> It is further presented in and to said court that prior to the commission of the aforesaid offense on the 20th day of October 1991 on Cause Number 91-CR-1157-B, in the 138th District Court of Cameron County, Texas, the Defendant [Garza] was convicted of the felony offense of possession of controlled substance. And this paragraph, enhancement paragraph, is assigned to each Cause Number or count, I'm sorry, count number— Count One, Count Two, Count Five, Count Seven.

>         . . . .

> Count Six, Count Seven, Count Twelve, Count Fourteen and Count Sixteen.

The trial court asked Garza to enter his plea to the enhancement allegations, and Garza said, "True." Here, Garza pleaded "true" to the enhancement paragraph. Thus, the State met its burden, and Garza cannot now complain that the evidence was insufficient to support the enhancement allegation. *See Wilson*, 671 S.W.2d at 525.

Garza argues, however, that there is no evidence that he pleaded "true" to a "final offense that could be used for enhancement purposes." Garza further argues, citing section 12.42(e) of the penal code, there is nothing in the record indicating that his prior conviction was not a state jail felony, under which no enhancement is allowed. *See* TEX. PENAL CODE ANN. § 12.42 (West Supp. 2011). In this case, the record does not affirmatively reflect that the judgment for the enhancement was not final; therefore, even under the exception to the general rule, Garza may not raise a sufficiency of the evidence challenge to the enhancement allegations because he pleaded "true." *See Ex parte Rich*, 194 S.W.3d at 513. Furthermore, the pen packet admitted at the punishment phase of Garza's trial states that Garza received a seven-year sentence for his possession of a controlled substance conviction. The punishment range for a State jail felony conviction is not more than two years, *see* TEX. PENAL CODE ANN. § 12.35(a) (West Supp. 2011); therefore, because Garza received a sentence of seven years' confinement, the record does not affirmatively reflect that Garza was previously convicted of a state jail felony.[9] *See Ex parte Rich*, 194 S.W.3d at 513. We overrule Garza's fifth issue.

## VII. DEFECTIVE INDICTMENT

By his sixth issue, Garza contends that the indictment in this case was defective because it failed to state an element of the offense. Specifically, Garza argues that due

---

[9] We note that in the pen packet of Garza's prior conviction of possession of a controlled substance, there was no deadly weapon finding or a finding that Garza had previously been finally convicted of any felony "under Section 20A.03 or 21.02 or listed in Section 3g(a)(1), Article 42.12, Code of Criminal Procedure;" or . . . "for which the judgment contains an affirmative finding under Section 3g(a)(2), Article 42.12, Code of Criminal Procedure." *See* TEX. PENAL CODE ANN. § 12.35(c) (West Supp. 2011) (allowing person convicted of a State jail felony to be punished for a third degree felony).

to the failure to include the statutory language defining "without consent," he was "deprived of his right to a grand jury indictment and due process under both the federal and [S]tate constitutions because the State was not required to prove all elements beyond a reasonable doubt." Garza further argues, without citation to authority, that he suffered egregious harm due to this omission and that we must reverse his convictions for counts one and two.

A defendant waives any defect of form or substance in an indictment if an objection is not made before the date trial commences. *See* TEX. CODE CRIM. PROC. ANN. art. 1.14(b) (West 2005); *Smith v. State*, 309 S.W.3d 10, 18 (Tex. Crim. App. 2010). The failure to recite an element of the offense is a defect of substance. *Smith*, 309 S.W.3d at 17–18. Therefore, by failing to object before trial on the basis that the indictment failed to recite an element of the offense, Garza has waived error, if any. *See* TEX. CODE CRIM. PROC. ANN. art. 1.14(b); *Smith*, 309 S.W.3d at 18; *Studer v. State*, 799 S.W.2d 263, 271 (Tex. Crim. App. 1990); *see also Teal v. State*, 230 S.W.3d 172, 177 (Tex. Crim. App. 2007) (focusing on whether alleged defect was brought to trial court's attention). We overrule Garza's sixth issue.

## VIII.   INEFFECTIVE ASSISTANCE OF COUNSEL

By his eighth issue, Garza contends that his counsel rendered ineffective assistance. Specifically, Garza contends that his trial attorneys were ineffective because they: (1) "fail[ed] to investigate facts and present a plausible defense"; (2) failed to object to a witness's statement that allegedly implied that Garza had committed another offense, to S.B.'s testimony, to Elizabeth's testimony that he showed her "nasty pictures," to admission of the peer review article, and to Elizabeth's medical records; (3)

45

allowed leading questions during Elizabeth's testimony[10]; (4) failed to attack Elizabeth's credibility; (5) failed to effectively cross-examine Mungia; (6) failed to request a competency hearing for Elizabeth; (7) failed to object to the defective indictment; and (8) allowed the State to attack Garza's character during the punishment phase of trial.

## A.     Standard of Review and Applicable Law

Ineffective assistance of counsel claims are evaluated under the two-part test articulated by the United States Supreme Court in *Strickland v. Washington*. *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). The *Strickland* test requires the appellant to show that counsel's performance was deficient, or in other words, that counsel's assistance fell below an objective standard of reasonableness. *Thompson*, 9 S.W.3d at 812; *see Strickland*, 466 U.S. at 687. The appellant must also show that there is a reasonable probability that, but for counsel's errors, the result would have been different. *Thompson*, 9 S.W.3d at 812; *see Strickland*, 466 U.S. at 694. In determining the validity of appellant's claim of ineffective assistance of counsel, "any judicial review must be highly deferential to trial counsel and avoid the deleterious effects of hindsight." *Thompson*, 9 S.W.3d at 813.

The burden is on the appellant to prove ineffective assistance of counsel by a preponderance of the evidence. *Id.* Appellant must overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance and that his actions could be considered sound trial strategy. *See Strickland*, 466 U.S.

---

[10] We note that defense counsel objected to the prosecution's leading questions during Elizabeth's testimony and asked for a running objection.

46

at 689; *Jaynes v. State*, 216 S.W.3d 839, 851 (Tex. App.—Corpus Christi 2006, no pet.). A reviewing court will not second-guess legitimate tactical decisions made by trial counsel. *State v. Morales*, 253 S.W.3d 686, 696 (Tex. Crim. App. 2008) ("[U]nless there is a record sufficient to demonstrate that counsel's conduct was not the product of a strategic or tactical decision, a reviewing court should presume that trial counsel's performance was constitutionally adequate . . . ."). Counsel's effectiveness is judged by the totality of the representation, not by isolated acts or omissions. *Thompson*, 9 S.W.3d at 813; *Jaynes*, 216 S.W.3d at 851. An allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011); *Bone v. State*, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002); *Thompson*, 9 S.W.3d at 814 (setting out that "in the vast majority of cases, the undeveloped record on direct appeal will be insufficient for an appellant to satisfy the dual prongs of *Strickland*"); *see Jackson v. State*, 877 S.W.2d 768, 771–72 (Tex. Crim. App. 1994) (en banc) (stating that "we must presume that counsel is better positioned than the appellate court to judge the pragmatism of the particular case, and that he made all significant decisions in the exercise of reasonable professional judgment" and that "[d]ue to the lack of evidence in the record concerning trial counsel's reasons" for the alleged ineffectiveness, the court was "unable to conclude that appellant's trial counsel's performance was deficient") (internal quotations omitted).

**B.    Discussion**

The record is silent regarding Garza's trial counsels' reasons for their acts or omissions. We conclude that Garza has failed to overcome the strong presumption that

47

trial counsel rendered effective assistance. *See Ex parte Martinez*, 330 S.W.3d at 901; *Bone*, 77 S.W.3d at 835; *Thompson*, 9 S.W.3d at 814; *see also Jackson*, 877 S.W.2d at 771–72. Furthermore, although Garza generally claims that trial counsel was ineffective, he does not provide any argument, with citation to appropriate authority, that there is a reasonable probability that the result of his trial would have been different but for trial counsels' alleged errors. *Thompson*, 9 S.W.3d at 812; *see Strickland*, 466 U.S. at 694.[11] Garza must make such a showing under the second prong of *Strickland*. *See* 466 U.S. at 687. Accordingly, we overrule Garza's eighth issue.[12] *See Thompson*, 9 S.W.3d at 813 (providing that the burden is on the appellant to prove ineffective

[11] Regarding trial counsel's alleged failure to investigate the facts, Garza cites *Lindstadt v. Kean*, 239 F.3d 191 (2d Cir. 2001). In that case, the court found that the cumulative errors of defense counsel caused the appellant to receive ineffective assistance. *Id.* at 194. The *Lindstadt* Court determined that trial counsel had: (1) failed to notice a one-year error in the date of the alleged abuse; (2) made no effective challenge to the only physical evidence of sexual abuse; (3) "announced in his opening that, after the close of the state's case, [the appellant] and counsel would decide 'whether [the prosecutors] have proven their case,' and only 'if they have made their case' would [the appellant] testify. [The appellant's] testimony in his own defense therefore became an implicit concession that the prosecutor had 'made [its] case'"; and (4) allowed exclusion of testimony concerning his defensive theory. *Id.* Garza does not allege that any of the above-mentioned acts occurred in this case. Therefore, this case is not relevant to our analysis.

Garza also cites *Pavel v. Hollins*, 261 F.3d 210, 223 (2d Cir. 2001). In *Pavel*, the court again determined that the cumulative effect of trial counsel's errors caused the appellant to be deprived of effective assistance. *Id.* at 216. In that case, at a habeas corpus hearing, the defense counsel stated that he chose not to present any defense "solely because he was confident that, at the close of the prosecution's presentation of its evidence, the trial judge would grant [defense counsel's] motion to dismiss the government's charges against Pavel." *Id.* The court further found that the defense counsel failed to call a medical expert to testify as to the significance of the physical evidence presented by the prosecution and failed "to introduce any evidence from a disinterested source in support of the theory that Ms. Pavel was manipulating the boys [accusing Pavel of sexual abuse] was a substantial gap in the defense's presentation." *Id.* The court concluded that "In light of the cumulative weight of the three serious flaws in [trial counsel's] representation of Pavel described above, we hold that [trial counsel's] representation did not fall within the Sixth Amendment's 'wide range' of adequate assistance." *Id.* Again, this case is irrelevant to our analysis because Garza does not contend, nor does the record reflect, that his trial counsel failed to present any defense because they believed the trial court would dismiss the charges against Garza.

[12] We note that Garza does not provide any other authority in support of his argument that the objections he claims trial counsel should have made would have been meritorious. *See Melonson v. State*, 942 S.W.2d 777, 782 (Tex. App.—Beaumont 1997, no pet.).

48

assistance of counsel by a preponderance of the evidence); *Bessey v. State*, 199 S.W.3d 546, 555 (Tex. App.—Texarkana 2006) (finding briefing waiver where appellant made no effort to show how record demonstrated prejudice under *Strickland's* second prong), *aff'd*, 239 S.W.3d 809 (Tex. Crim. App. 2007); *Peake v. State*, 133 S.W.3d 332, 334 (Tex. App.—Amarillo 2004, no pet.) (overruling the appellant's ineffective assistance of counsel claim due to inadequate briefing and noting that the appellate court has "no duty to unilaterally fill the void appellant left" by his briefing).

## IX. CONCLUSION

We affirm the judgment.

_____
ROGELIO VALDEZ
Chief Justice

Do not Publish.
TEX. R. APP. P. 47.2(b)
Delivered and filed the
15th day of March, 2012.